UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 06-20394-CR-GOLD/BANDSTRA

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

WILKENS PHILIUS,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on (a) Defendant Wilkens Philius' Motion to Suppress Evidence Obtained as a Result of an Illegal Search (D.E. 53) filed on February 8, 2007; and (b) [Defendant's] Motion for a *Franks* Hearing (D.E. 68) filed on April 9, 2007. Previously, these motions were referred to the undersigned for appropriate proceedings by the Honorable Alan S. Gold pursuant to 28 U.S.C. §636 (b). Accordingly, the undersigned conducted an evidentiary hearing on these motions on April 19 and May 2, 2007. Based on the evidence and applicable law, the undersigned recommends that Defendant's Motion to Suppress Evidence and Motion for *Franks* Hearing be DENIED.

## FINDINGS OF FACT[1]

On June 16, 2006, United States Secret Service agents conducted a controlled delivery of a number of boxes containing clothing which had been purchased with stolen credit card numbers to Gerry Nicholas in Miami, Florida. Agents then conducted a traffic stop of Nicholas to question him about the boxes. Nicholas told the agents that he was on his way to deliver them to "Kash" who had paid him $150.00 to receive the boxes and deliver them to Kash at his house. Nicholas then identified the house in which Kash lived and advised that Kash lived there with family members and resided in the back of the house.

Special Agent Vincent Marino, the lead agent in the investigation, proceeded to the residence with his partner and walked to the back of the house. Several other agents and police officers took surveillance positions at the perimeter of the house. Agent Marino heard voices inside the house so he knocked on the back door. No one answered. Thereafter, Agent Marino and his partner walked to the front of the house.

There, the agents knocked on the front door which was answered by Jerry Alexis. The agents identified themselves and asked if "Kash" was there. Jerry Alexis, later identified as defendant's brother, came outside and escorted the agents to the rear of the house. Once again, the agents knocked on the back door while Alexis advised that the

---

[1]These factual findings are based on the testimony of Special Agent Vincent P. Marino, United States Secret Service, Widley Philius and Jerry Alexis, brothers of defendant Wilkens Philius, and Lisa Piotrowski, a neighbor of defendant. Inconsistencies in this testimony are resolved as found above based on the Court's assessment of the credibility and accuracy of recollections of these witnesses.

2

"police" were there and wanted to talk to defendant.

Widely Philius, later identified as another brother of defendant, opened the back door. Agent Marino was able to look inside the premises and saw cardboard boxes which appeared similar to those involved in their investigation. Widely Philius advised that defendant, Wilkens Philius, was not there. Agent Marino asked if he could "check" inside the house and Widely Philius said "go ahead."[2] Agent Marino and his partner then walked through the back door and saw about ten cardboard boxes with familiar wrappings inside the room. Agent Marino also saw a closed door which Widely Philius stated went to the "back" of the house. Agent Marino asked if he could open the door and Widely Philius said "sure." Agent Marino then opened the door, with resistence from the other side, and saw a man later identified as defendant jumping, fully clothed, into the shower. The agents took defendant into custody, handcuffed and searched him, and escorted him to a seat in the rear room of the house. The agents advised defendant of the reason for their visit and added that he was not yet under arrest.

Agent Marino then proceeded to examine the boxes in plain view in the room. Agent Marino observed that the Federal Express shipping/tracking labels had been removed from the boxes. Nevertheless, Agent Marino placed telephone calls to Federal Express and the company identified as the shipper of the boxes in an effort to obtain information about the shipment. Neither Federal Express nor the shipper could provide any information regarding this shipment due to the missing shipping/tracking labels from

---

[2]Widely Philius testified at the suppression hearing and denied being asked or giving consent to the agents to enter the residence. The undersigned accepts Agent Marino's testimony as true on this issue despite contrary evidence offered by defendant and his brother, Jerry Alexis for reasons discussed more fully below.

the boxes.

Agent Marino also called AUSA Shawn Cronin to advise of the situation and request further instructions. Agent Marino then secured the residence, released defendant from custody, and prepared an affidavit in support of a search warrant for the premises. The search warrant was later executed and the boxes and other items were seized from the residence.

## ANALYSIS

### a. Motion to Suppress Evidence

Defendant first moves to suppress all items seized from the residence, including the cardboard boxes and their contents, credit card and identification documents, and other items, on the grounds (a) that the agents entered the residence without consent by defendant or anyone else with authority to grant such consent; and/or (b) that any consent to enter by Widely Philius was obtained only through a show of authority so that it was not free and voluntary; and/or (c) the agents exceeded the scope of any consent given by Widely Philius.[3]

---

[3] The undersigned notes that the primary argument now advanced by defendant, i.e., that no consent to enter was ever given to enter the residence, was not included in defendant's original or supplemental motions and never advanced until the continuation of the hearing on this motion to suppress on May 2, 2007. Initially, defendant asked to continue the suppression hearing in order to call a single witness, Widely Philius as a witness who was unavailable on the first hearing date. On May 2, 2007, defendant then called Widely Philius and two additional witnesses, Jerry Alexis and Lisa Piotrowski, who supported defendant's new position regarding the absence of consent. While the undersigned allowed this testimony and addresses this issue herein, the undersigned finds that defendant should have advised the government and the Court of this change in position and in witnesses before the continuation of the hearing to allow the government an opportunity to call additional witnesses if deemed

4

The facts, as found above, do not support defendant's position. First, with respect to consent, the undersigned finds that only two Secret Service agents approached defendant's residence, properly requested and were given consent to enter from one of its lawful residents, Widely Philius, and then entered the premises. Agent Marino credibly testified that he and his partner first went to the back door of the house where they knocked without response from the inside. The agents then walked to the front of the house, again knocked on the door, and were greeted by Jerry Alexis who returned with them to the back of the house thereby resulting in Widely Philius answering the back door. No credible evidence supports defendant's position that any law enforcement officers ever entered the residence before Widely Philius opened the back door and consented to the entry.[4] Thus, the undersigned concludes that the agents asked for and were given consent to enter as testified to by Agent Marino.

Defendant's remaining arguments with respect to consent also lack factual support. Defendant argues in his written motion that Widely Philius, "the individual who gave consent," had no authority to do so. This argument was not advanced after Widely Philius testified that he lived at the residence and was not merely present at the time. Thus,

---

necessary to do so.

[4] In so finding, the Court notes that neither Jerry Alexis nor Widely Philius testified that any officers entered the back door prior to his opening the door. The only witness testifying to entry by officers before seeing Widely Philius was Lisa Piotrowski who was inside her own residence behind defendant's house talking on the telephone. The Court finds that Lisa Piotrowski was not present on the scene and could not have heard any conversation there. The Court also questions Ms. Piotrowski's testimony because of the number of officers she recalls seeing at the residence (twenty to thirty) and the types of firearms she claims to have seen in the hands of the officers ("rifles and hand guns"). No rifles were carried by any law enforcement officers.

defendant abandons this argument at this time. Next, the undersigned finds that the consent to enter by Widely Philius was not obtained through a "show of authority" thereby invalidating the consent. The undersigned finds that Widely Philius opened the door for his brother, Jerry Alexis, and in the presence of only two law enforcement officers, Agent Marino and his partner. Neither had their weapons drawn or pointed at Widely Philius, at the time, and no order was given to "come out with hands up" or on threat of "bringing in dogs." Rather, the two agents merely asked Widely Philius if "Kash" was there and then if they could "check" inside the house. Widely Philius was never threatened with the firearms, police dogs, or in any other manner during this brief encounter.[5]

Finally, the undersigned notes that the agents did not exceed the scope of consent given by Widely Philius as also stated in the written motion. No facts support defendant's position that the house was searched without a warrant after defendant was located and detained. Special Agent Marino testified that he only read information from the outside of the subject boxes and only searched the premises after obtaining a search warrant.

B. Motion for *Franks* Hearing

Defendant, by supplemental memorandum, also requests a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), to flush out alleged omissions and inaccuracies in the search warrant affidavit prepared by Agent Marino in support of the search warrant.

---

[5]The undersigned notes that Jerry Alexis provided most of the details concerning events at the back door including the alleged threat to bring in dogs if the door was not opened and the number of police officers present in the yard. Widely Philius provided no such testimony or details and only testified to an alleged command to "come out with hands up" and guns pointed at him when he did so. This testimony conflicts with both Special Agent Marino and Jerry Alexis in several respects resulting in the facts as found above.

Specifically, defendant alleges that Agent Marino may have learned that the boxes found in the premises were actually lawfully obtained, and that Agent Marino learned this while contacting either Federal Express or the shipper identified on the boxes. Defendant offers no proffer of facts or evidence in support of this position. Rather, defendant merely speculates about what Agent Marino might have learned in contacting Federal Express or from the shipper during his telephone calls to those companies. Nevertheless, defendant argues that such information exists and should have been included in the search warrant affidavit for consideration by the court before issuing the search warrant.

Under *Franks*, "[a] search warrant may be voided if the affidavit supporting the warrant contains deliberate falsity or reckless disregard for the truth." 438 U.S. 155-56. "There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant." *Id.* at 171. A defendant challenging the accuracy and completeness of a search warrant affidavit must meet certain requirements when requesting a hearing on this issue. As explained in *Franks*:

> ....To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits are sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistakes are insufficient.

*Id.*

Here, defendant alleges deliberate omissions in the search warrant affidavit, i.e., that Agent Marino left out details concerning the shipment he learned from Federal Express or the shipper, without any offer of proof of such allegations. In defendant's view,

Agent Marino most likely learned that the boxes were lawfully in the residence but failed to include this information in the affidavit. However, defendant offers no affidavits or other offer of proof to support this theory. Defendant's speculation is not enough to mandate a hearing on this issue.

Nevertheless, the government called and questioned Agent Marino about this issue during the suppression hearing. Agent Marino testified about his telephone calls to both Federal Express and the shipper. Agent Marino explained that absolutely no shipping information was available from either source because of the missing shipping/tracking labels on the boxes. Thus, Agent Marino never learned anything about the shipment of these boxes - - and certainly nothing indicating that the boxes were lawfully in defendant's residence - - which could have or should have been included in the search warrant affidavit. In short, defendant offers nothing to support his theory concerning the boxes which would warrant a review of the search warrant affidavit or review of the finding of probable cause resulting in the issuance of the search warrant.

## SUMMARY

For all of the foregoing reasons, the undersigned recommends that Defendant's Motion to Suppress Evidence Obtained as a Result of an Illegal Search and Motion for *Franks* hearing be DENIED.

The parties may serve and file written objections to this Report and Recommendation with the Honorable Alan S. Gold, United States District Judge, within **five (5) days** of the receipt. See 28 U.S.C. § 636(b)(1)(c); United States v.

Warren, 687 F.2d 347 (11th Cir. 1982), cert. denied, 460 U.S. 1087 (1983); Hardin v. Wainwright, 678 F.2d 589 (5th Cir. Unit B 1982); see also Thomas v. Arn, 474 U.S. 140 (1985).

RESPECTFULLY SUBMITTED at Miami, Florida this ___ day of May, 2007.

TED E. BANDSTRA
CHIEF UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
All counsel of record